```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
                      FORT WORTH DIVISION

EDWARD LYNN RUSSELL,            §
                                §
          Petitioner,           §
                                §
v.                              §   CIVIL ACTION NO. 4:14-CV-792-Y
                                §
WILLIAM STEPHENS, Director,     §
Texas Department of Criminal    §
Justice, Correctional           §
Institutions Division,          §
                                §
          Respondent.           §
```

**OPINION AND ORDER**

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Edward Lynn Russell, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against William Stephens, director of TDCJ, Respondent.

After having considered the pleadings, state-court records, and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. Factual and Procedural History**

Petitioner, was adjudicated a sexually violent predator under the prior version of Chapter 841 of the Texas Health and Safety Code and ordered to civil commitment.  He was later charged in Tarrant County, Texas, with violating various requirements of the civil-commitment order.  On October 12, 2011, a jury found him

guilty on eleven such counts.  (Adm. R., Clerk's R. 152-95, ECF No. 14-11.)  The Second District Court of Appeals of Texas summarized the facts of the case as follows:

> In February 2008, Russell agreed to a final judgment identifying him as a sexually violent predator as defined in health and safety code section 841.003 and ordering him to be civilly committed for outpatient treatment and supervision in accordance with chapter 841 of the health and safety code.  In addition to addressing Russell's treatment and supervision, the order of civil commitment required him to "reside in supervised housing at a Texas residential facility under contract with the Council on Sex Offender Treatment (Council) or at another location or facility approved by the Council"; to "submit to tracking under a global positioning satellite (GPS) monitor or other monitoring system provided"; to "exactingly participate in and comply with the specific course of treatment provided by the Council"; and to "comply with all written requirements of the Council and case manager."  The commitment order also contained the following notice:  "**EDWARD RUSSELL shall strictly comply with the commitment requirements of Health & Safety Code § 841.082 and this Order of Commitment, or will be charged with a felony of the third degree, which may be enhanced to a more severe punishment.**"
>
> At the outset of his commitment and treatment, Russell reviewed and agreed to abide by all of the rules and requirements contained in the following documents: "Civil Commitment Requirements: Standard Requirements of the Treatment Program"; "Council on Sex Offender Treatment Supervision Requirements"; "Council on Sex Offender Treatment Additional Supervision Requirements"; and "Council on Sex Offender Treatment Global Positioning Tracking Service Requirements for MTD."  In 2009 and 2010, Russell signed additional documents evidencing his agreement to abide by various requirements of his commitment.
>
> During the course of his outpatient treatment and supervision, Russell failed to comply with numerous written treatment requirements.  Consequently, in May 2010, he was unsuccessfully discharged early from the sex offender treatment program.  Russell was later indicted on eleven counts of violating a civil commitment

>requirement as a sexually violent predator. At trial, Russell's former case managers, Wesley Griffin and Lawrence Daniels, testified about Russell's violations of his treatment requirements. After convicting Russell on each count, and upon his plea of true to the repeat offender notice, the jury assessed Russell's punishment at twenty years' confinement and a $10,000 fine for each count. The trial court sentenced Russell accordingly.

(*Id.,* Op. 2-4, ECF No. 14-4 (emphasis in original).) In turn, the Texas Court of Criminal Appeals refused, without written order, Petitioner's petition for discretionary review and denied his state habeas application challenging Chapter 841 of the Texas Health and Safety Code on constitutional grounds. (*Id.*, Action Taken, ECF No. 14-19.) This federal habeas petition followed.

In one ground, Petitioner claims Chapter 841, in effect at the time of his civil commitment, is unconstitutional on its face and as applied to him because it "allows its designated agents, the Office on Sex Offender Management to violate their charges'" rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments. (Pet. 6, ECF No. 1.) More specifically, he asserts:

>[S]ection 841 is unconstitutional for allowing private citizen's, appointed by section 841, unfettered power to deny a specific group of U.S. citizens their constitutionally protected rights by setting rules and regulations doing so, that are enforced by section 841 by threat of punishment, i.e., imprisonment in T.D.C.J.

(Pet'r's Br. 1, ECF No. 4.)

The state appellate court addressed Petitioner's claim as follows:

>Russell complains about his case managers "set[ting] treatment plans," but the legislature expressly required

3

the Council (now known as the "Office [of Violent Sex Offender Management]") to "approve . . . a treatment plan for the committed person to be developed by the treatment provider."  Thus, while the treatment provider develops the treatment plan, the Office approves it.  Under this framework, Russell's case managers did not have unbridled authority to devise–and require Russell to abide by–any civil commitment requirement that they could potentially imagine without the requirement first being approved by the Office.  Indeed, here, each of the documents that Russell reviewed and approved upon entering the treatment program contains a notation at the bottom right corner indicating the date that the "CSOT," or Council on Sex Offender Treatment, last revised it.

Further, the case managers did not have the power to determine or define what did and did not constitute "criminal conduct," as Russell argues.  That responsibility lies with the legislature.  Exercising that authority, it has determined that "[a] person commits an offense if, after having been adjudicated and civilly committed as a sexually violent predator under this chapter, the person violates a civil commitment requirement imposed under Section 841.082."  Subsection four of section 841.082 requires the sexually violent predator's "participation in and compliance with a specific course of treatment provided by the office and compliance with all written requirements imposed by the case manager or otherwise by the office."  Russell's order of civil commitment included this requirement.

Nor could Russell's case managers have unilaterally determined whether he "violated" the civil commitment order for failing to comply with a civil commitment requirement.  Although the case managers were tasked with *reporting* Russell's violation of a commitment requirement, and the indictment *accused* Russell of violating a commitment requirement, it was the jury that had the ultimate responsibility of determining whether Russell committed a "violation" of his commitment order.  According to the record, including the trial court's charge to the jury at the guilt phase, that is precisely what happened in this case.  Russell had both notice of the charges against him and an opportunity to be heard.

(Adm. R., Op.133-35, ECF No. 14-4 (citations omitted) (emphasis in original).)

Respondent asserts the petition should be dismissed because Petitioner's claims are meritless and relief is foreclosed by AEDPA's relitigation bar. (Resp't's Answer 1, ECF No. 20.)

## II. Rule 5 Statement

It appears that Petitioner has sufficiently exhausted his state remedies and that the petition is neither time-barred nor successive.

## III. Discussion

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). If the Supreme Court has not "broken sufficient legal ground to establish [a] . . . constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar" under either prong. *Harrington v. Richter,* 562 U.S. 86, 98-99 (2011)).

5

The Supreme Court has not made clear that the version of chapter 841 in effect at the time Petitioner was civilly committed under the statute is unconstitutional on its face. Absent such squarely established Supreme Court precedent, this constitutional challenge to the statute does not provide a basis for federal habeas relief. *Knowles v. Mirzayance,* 556 U.S. 111, 121 (2009).

Nor has Petitioner demonstrated that the statute is unconstitutional as applied to him. In this context, due process requires that the conditions and implementation of the statute "bear some reasonable relation to the purpose for which" Petitioner is committed. *Seling v. Young,* 531 U.S. 250, 265 (2001) (citing *Foucha v. Louisiana,* 504 U.S. 71, 79 (1992); *Youngberg v. Romeo,* 457 U.S. 307, 324 (1982); *Jackson v. Indiana,* 406 U.S. 715, 738 (1972). As noted by this Court in *Brown v. Taylor,* No. 4:12-CV-698-A, 2013 WL 1104268 (N.D.Tex. Mar. 14, 2013), the Supreme Court has repeatedly upheld civil-commitment programs and laws regarding sexually violent predators that are similar to Texas's laws and programs. *See United States v. Comstock,* — U.S. —, 130 S. Ct. 1949 (2010); *Kansas v. Crane,* 534 U.S. 407 (2002); *Seling,* 531 U.S. at 262, 267; *Kansas v. Hendricks,* 521 U.S. 346 (1997). Texas courts have also upheld provisions for civil commitment of sexually violent predators and implementation of the provisions. *See, e.g., In re Commitment of Fisher,* 164 S.W.3d 637 (Tex. 2005); *Beasley v. Molett,* 95 S.W.3d 590, 607–08 (Tex. App.–Beaumont 2002, pet.

6

ref'd).  Petitioner attempts to differentiate between statutory schemes involving inpatient confinement and treatment versus Texas's outpatient conditions and supervision and also urges that amendments to the Texas statute show that the state legislature realized the prior version was unconstitutional. (Pet'r's Reply 4-7, ECF No. 25; Pet'r's Addendum 1-2, ECF No. 26.) This Court finds no Supreme Court precedent supporting his first argument, and, admittedly, the 2015 amendments do not apply to him.[1]

For the reasons discussed, Petitioner's petition for a writ of habeas corpus is DENIED.  Further, for the reasons discussed, a certificate of appealability is DENIED.

SIGNED November 30, 2015.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[1] Most significantly, the 2015 amendments, effective June 17, 2015, deleted all references to "outpatient treatment," eliminated the criminal penalties for certain violations, including violations of conditions imposed by outpatient-treatment providers, and implemented a tiered treatment program. *See* Act of May 18, 2015, 84th Leg., R.S., ch. 845, 2015 Tex. Sess. Law 845.

7