IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EDWARD LYNN RUSSELL, | § | |
| Petitioner, | § | |
| | § | |
| V. | § | Civil Action No. 4:14-CV-792-Y |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Division, | § | |
| Respondent. | § | |

**OPINION AND ORDER ON REMAND**

In 2008, petitioner Edward Lynn Russell was adjudicated a sexually violent predator in Tarrant County, Texas, under prior provisions of Chapter 841 of the Texas Health and Safety Code and ordered to civil commitment. (Reporter's R., vol. 6, State's Ex. 1, doc. 14-10.) Petitioner was later charged with violating multiple requirements of his civil commitment, a third-degree felony, and was found guilty by a jury on eleven such counts. (Clerk's R. 152-95, doc. 14-11.) The jury also found the enhancement paragraph in the indictment true and assessed Petitioner's punishment at 20 years' confinement on each count, the sentences to run concurrently.

This Court previously denied Petitioner's petition, but the United States Court of Appeals for the Fifth Circuit remanded the case for consideration of whether the versions of Texas Health & Safety Code § 841.085(a) and § 841.082 applicable to Petitioner violate the Due Process Clause of the United States Constitution

for vagueness. The Court is to make this determination under the "clearly established federal law" set forth in the Supreme Court decisions in *Hill v. Colorado,* 530 U.S. 703, 732 (2000); *Grayned v. City of Rockford,* 408 U.S. 104, 108-09 (1972); and *Kolender v. Lawson,* 461 U.S. 352, 358 (1983). (5th Cir. J. 3, doc. 41.)

## I. Factual and Procedural History

To assist the reader, the Court reiterates the factual history of the case as summarized by the Second District Court of Appeals of Texas.

> In February 2008, Russell agreed to a final judgment identifying him as a sexually violent predator as defined in health and safety code section 841.003 and ordering him to be civilly committed for outpatient treatment and supervision in accordance with chapter 841 of the health and safety code. In addition to addressing Russell's treatment and supervision, the order of civil commitment required him to "reside in supervised housing at a Texas residential facility under contract with the Council on Sex Offender Treatment (Council)[1] or at another location or facility approved by the Council"; to "submit to tracking under a global positioning satellite (GPS) monitor or other monitoring system provided"; to "exactingly participate in and comply with the specific course of treatment provided by the Council"; and to "comply with all written requirements of the Council and case manager." The commitment order also contained the following notice: "**EDWARD RUSSELL shall strictly comply**

---

[1]Under the prior statutory scheme, the Council on Sex Offender Treatment (the Council) was responsible for "providing appropriate and necessary treatment and supervision through the case management system." The Council was later renamed as the Office of Violent Sex Offender Management or "OVSOM." *See* Act of May 28, 2003, 78th Leg., R.S., ch. 347, § 17, 2003 Tex. Gen. Laws 1505, 1515 (amended by Act. of May 23, 2011, 82nd Leg., R.S., ch. 1201, § 3, 2011 Tex. Gen. Laws 3197, 3199. And, since that time, the Council was again renamed as the Texas Civil Commitment Office or "the Office." *See* TEX. HEALTH & SAFETY CODE ANN. § 841.002(4) (West 2017). To avoid confusion, the Court refers to the state entity as the Council in this opinion.

2

**with the commitment requirements of Health & Safety Code § 841.082 and this Order of Commitment, or will be charged with a felony of the third degree, which may be enhanced to a more severe punishment.**"

At the outset of his commitment and treatment, Russell reviewed and agreed to abide by all of the rules and requirements contained in the following documents: "Civil Commitment Requirements: Standard Requirements of the Treatment Program"; "Council on Sex Offender Treatment Supervision Requirements"; "Council on Sex Offender Treatment Additional Supervision Requirements"; and "Council on Sex Offender Treatment Global Positioning Tracking Service Requirements for MTD." In 2009 and 2010, Russell signed additional documents evidencing his agreement to abide by various requirements of his commitment.

During the course of his outpatient treatment and supervision, Russell failed to comply with numerous written treatment requirements. Consequently, in May 2010, he was unsuccessfully discharged early from the sex offender treatment program. Russell was later indicted on eleven counts of violating a civil commitment requirement as a sexually violent predator.[2] At trial, Russell's

---

[2]Specifically, the indictment alleged that Petitioner violated his civil commitment requirements by:

failing to participate and comply with a specific course of treatment by failing to follow the written standard requirements of the treatment plan of the OVSOM by failing to keep his thought journal (three counts);

failing to participate and comply with a specific course of treatment by failing to follow the written standard requirements of the treatment plan of the OVSOM by failing to complete a "high risk" plan and "what if" assignment (one count);

failing to abide by the written global positioning tracking service requirements . . . provided by the case manager by separating from a miniature tracking device (two counts);

failing to participate in and comply with a specific course of treatment by failing to follow the written standard requirements of the treatment plan of the OVSOM by engaging in anonymous or casual sex (two counts);

failing to participate in and comply with a specific course of treatment determined by the OVSOM by failing to follow the written standard requirements of the treatment plan of the OVSOM by engaging in deviant masturbation as set out in the treatment behavior contract requirements by masturbating to the thoughts of a male

>           former case managers, Wesley Griffin and Lawrence
> Daniels, testified about Russell's violations of his
> treatment requirements. After convicting Russell on each
> count, and upon his plea of true to the repeat offender
> notice, the jury assessed Russell's punishment at twenty
> years' confinement and a $10,000 fine for each count.
> The trial court sentenced Russell accordingly.

(Mem. Op. 2-4, doc. 14-4 (emphasis in original).)

Petitioner asserts that the version of chapter 841 under which he was convicted is unconstitutional on its face and as applied "for allowing private citizens, appointed by § 841, unfetterd power to deny a specific group of U.S. citizens their constitutionally protected rights by setting rules and regulations doing so, that are enforced by § 841 by threat of punishment." (Pet'r's Mem. 1, doc. 4.) According to Petitioner,

> "section 841 of the Texas Health and Safty [sic] Code
> gives the Office, their case workers, and their treatment
> providers, all of whom are private citizens without any
> formal education in constitutional law, the authority to
> decide what is appropriate and necessary treatment,
> supervision, and standards of care (.007 and .141(b)),
> without providing them with written guidelines or
> providing safeguards to prevent arbitrary, discriminate
> [sic], and oppressive rules that, upon violation of these

---

child (one count);

failing to participate in and comply with a specific course of treatment by failing to follow the written standard requirements of the treatment plan of the OVSOM by failing to take prescribed medication as directed by the attending physician or psychiatrist (one count); and

failing to participate in and comply with a specific course of treatment by failing to follow the written additional supervision requirements of the treatment plan of the OVSOM by communicating with a halfway house resident in a manner considered to be obscene, threatening, or harassing (one count).

(Adm R., Clerk's R. 2-5, doc. 14-11.)

4

rules, constitute a criminal offense (841.085).
(Id. at 4.) Petitioner raised a vagueness and overbreadth claim in his state habeas application, but the Texas Court of Criminal Appeals denied the application without written order. (State Habeas R. 7-8 & Action Taken, docs. 14-18 & 14-19.)

## II. Discussion

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court will not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the petitioner shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. *See* 28 U.S.C. § 2254(d). Therefore, under the first prong, applicable to this case, this Court may grant habeas relief only if the state court's adjudication of petitioner's claim resulted in a decision that was contrary to, or involved an unreasonable application of, the law set forth in *Hill, Grayned,* and *Kolender*.

Former § 841.085 of the Texas Health and Safety Code provides that "[a] person commits an offense if, after having been

adjudicated and civilly committed as a sexually violent predator under this chapter, the person violates a civil commitment requirement imposed under Section 841.082." Act of May 27, 2007, 80th Leg., R.S., ch. 1219, § 8, 2007 Tex. Gen. Laws 4115, 4117. Section 841.082 provided,

> (a) Before entering an order directing a person's outpatient civil commitment, the judge shall impose on the person requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community. The requirements shall include:
>
>> (1) requiring the person to reside in a Texas residential facility under contract with the council or at another location of facility approved by the council;
>>
>> (2) prohibiting the person's contact with a victim or potential victim of the person;
>>
>> (3) prohibiting the person's possession or use of alcohol, inhalants, or a controlled substance;
>>
>> (4) requiring the person's participation in and compliance with a specific course of treatment;
>>
>> (5) requiring the person to:
>>
>>> (A) submit to tracking under a particular type of tracking service and to any other appropriate supervision; and
>>>
>>> (B) refrain from tampering with, altering, modifying, obstructing, or manipulating the tracking equipment.
>>
>> (6) prohibiting the person from changing the person's residence;
>>
>> (7) if determined appropriate by the judge, establishing a child safety zone . . . ;

> (8) requiring the person to notify the case manager immediately but in any event within 24 hours of any change in the person's status that affects proper treatment and supervision, including a change in the person's physical health or job status and including any incarceration of the person; and
>
> (9) any other requirements determined necessary by the judge.

Act of May 19, 2005, 79th Leg., R.S., ch. 849, § 3, 2005 Tex. Gen. Laws 2892, 2893-94. Petitioner's claim implicates subsection (a)(4), mandating participation and compliance with a specific course of treatment.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "[T]he Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015) (citing *Kolender,* 461 U.S. at 357-58). *See also Hill,* 530 U.S. at 732 (providing a statute is impermissibly vague "if it fails to provide a person of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement"); *Grayned,* 408 U.S. 108-09 (stating "we insist that laws give the person of ordinary intelligence a reasonable

opportunity to know what is prohibited, so that he may act accordingly" and "provide explicit standards for those who apply them"); *Kolender,* 461 U.S. at 357-58 (providing "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a matter that does not encourage arbitrary and discriminatory enforcement").

Although § 841.082(a)(1), (2), (3), (5), (6), (7), and (8), provide clearly defined requirements reasonably related to the purpose of the statutory scheme and § 841.082(a)(9) allows the judge to impose requirements as necessary, § 841.082(a)(4), "requiring the person's participation in and compliance with a specific course of treatment," is ambiguous. The phrase "specific course of treatment" is not defined in the statutory scheme and does not provide an ordinary person fair notice of what conduct it punishes. *See Kolender,* 461 U.S. at 361. How would an ordinary person go about deciding what a "specific course of treatment" involves or understand that failing to keep a "thought journal," failing to complete a "high risk plan" or "what if" assignment, engaging in anonymous or casual sex, or masturbating to the thoughts of a male child is potentially unlawful? Clearly, the "specific course of treatment" for any person must be decided by professionals specifically trained in the area and may be subject to change over time. Thus, the problem is not what the provision is

designed to prohibit, but what it actually subjects to criminal penalty without notice.

Therefore, the Court concludes that prior § 841.085 and § 841.082(4) of the Texas Health and Safety Code under which Petitioner was convicted are overly vague. Accordingly, the state court's denial of Petitioner's claim is contrary to or an unreasonable application of *Hill, Grayned, and Kolender*. This conclusion is further reinforced by the state legislature's subsequent revision of § 841.085 to decriminalize the failure to abide by a similar provision in the revised statute "requiring the person's participation in and compliance with the sex offender treatment program provided by the office and compliance with all written requirements imposed by the office." *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.082(a)(3), 841.085 (West 2017).

For the reasons discussed, Petitioner's petition for writ of habeas corpus is GRANTED as to Petitioner's convictions under §§ 841.085 and 841.082(a)(4), which are void for vagueness.[3] Therefore, the convictions and sentences for the offenses resulting from a violation of § 841.082(a)(4) are VACATED. In all other respects, the petition for writ of habeas corpus is DENIED.

To the extent the petition is denied, a certificate of appealability will not be issued. Such a certificate may issue

---

[3]Because the Court finds the relevant provisions of the statute impermissibly vague, it is not necessary to address whether the Council was given too broad a discretion in determining the conduct proscribed or required to satisfy § 841.082(4).

9

"only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Under this standard, when a district court denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th Cir. 2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). Petitioner has not made such a showing. Therefore, a certificate of appealability should not issue.

SIGNED November 8, 2017.

*[signature: Terry R. Means]*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE